UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| BRANDY CLINTON, et al. ) <br><br> Plaintiffs, ) <br><br> v. ) <br><br> GOVERNMENT EMPLOYEES ) <br> INSURANCE COMPANY, ) <br><br> Defendant. ) | Case No.: 2:16-cv-430 |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiffs' Motion for Conditional Collective Certification and for Equitable Tolling, filed pursuant to 29 U.S.C. § 216(b), and an accompanying memorandum. ECF Nos. 33-34. On behalf of themselves and others similarly situated, Plaintiffs brought this action to recover unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* On March 3, 2017, Plaintiffs filed their motion seeking conditional certification requesting that the Court conditionally certify a collective class action and transmit notice to potential class members. ECF No. 33. Defendant Government Employees Insurance Company ("GEICO") responded in opposition on March 17, 2017, ECF No. 45, and Plaintiffs replied on March 23, 2017, ECF No. 48. This matter was then referred to the undersigned United States Magistrate Judge pursuant to a Referral Order from a United States District Judge. ECF No. 50; *see also* 28 U.S.C. §§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. On April 11, 2017, the undersigned conducted a hearing on the pending motion, at which Zev Antell appeared for the Plaintiffs and Eric Hemmendinger appeared for the

1

Defendant. For the following reasons, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Conditional Collective Certification and for Equitable Tolling, ECF No. 33, be **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In this action as originally filed, Plaintiffs Brandy Clinton, Helen Kaplan, and ten others who have filed opt-in notices with the Court are current and former employees of GEICO. ECF No. 34 at 1. Plaintiffs were employed as telephone claim representatives ("TCRs") at the GEICO call center in Virginia Beach, Virginia from July 11, 2013 to the present. *Id.* "Their primary duties are/were speaking with claimants, witnesses, and other involved parties about the facts of a claim and inputting the information gathered into Claim IQ...and their ability to exercise discretion in the performance of their job duties is/was circumvented by GEICO policy and Claim IQ." *Id.* at 7. Claim IQ is a program that "generates a recommended range of liability for Plaintiffs based on the data they input into the program." *Id.* at 8. Plaintiffs are required to use Claim IQ, but "must first get supervisor approval" before accepting Claim IQ's recommendation. *Id.* Plaintiffs "worked on teams of five or six TCRs and had the same reporting structure: they reported to a supervisor, who reported to a manager, who reported to the liability director." *Id.* at 7.

Plaintiffs claim that GEICO improperly classified them as exempt under the FLSA for having an "ability to exercise judgment," when in fact their job "requires 'little skill...[and] involve[s] many insignificant duties and duties identical to other non-exempt positions, such as Customer Service Representatives.'" *Id.* at 4. In support of their motion, Plaintiffs alleged, and provided seven declarations in support, that "they held the same positions, worked in the same call center, were paid on a salary basis, and that GEICO employs other TCRs at the Virginia Beach facility who perform the same job function (processing claims)." *Id.* at 7; ECF No. 34,

2

attachs. 1-7. Additionally, the declarations state that "due to the high volume of work, they and other TCRs at the Virginia Beach facility work well over 40 hours each week, and, as exempt employees, they are not compensated for these hours." ECF No. 34 at 8. Given that "[p]laintiffs hold the same position, have the same job duties, work in the same call center, and are uniformly classified as exempt from overtime regulations", Plaintiffs request the Court to "conditionally certify the proposed collective of Virginia Beach TCRs and authorize prompt judicial notice." *Id.* Plaintiffs also requested that the Court toll the statute of limitations for potential collective class members to August 16, 2016, the date GEICO moved to transfer the case to multi-district litigation, which was ultimately denied. *Id.* at 16-21. Along with the motion for conditional class certification, Plaintiffs filed a Motion to Stay Discovery pending resolution of the instant motion that the Court denied on March 30, 2017. ECF No. 49.

In its Memorandum of Opposition, GEICO argued that the Plaintiffs' proposed class is not similarly situated because, in an "identical lawsuit against GEICO" in the Eastern District of New York, "factual differences among the TCRs concerning the exercise of discretion and independent judgment, the central issue affecting their classification as exempt, precluded a collective action." ECF No. 45 at 1 (citing *Harper v. Government Employees Ins. Co.*, No. 2:09-cv-2254, 2015 WL 9673810 (E.D.N.Y. Nov. 16, 2015)). GEICO noted that TCR 1s handle first party medical expenses whereas TCR 2s also handle third-party bodily injury claims and settle small claims using figures recommended by Claim IQ that are approved by their supervisor. *Id.* at 6. GEICO also claimed that since the *Harper* court decertified the class because the TCRs were supervised to varying degrees, this Court should not certify the proposed class. In support of its position, GEICO proffered declarations from Matthew Mitchell, a supervisor, and Laura Schmidt, a TCR in the Virginia Beach office, along with excerpts from a deposition from Nadia

Kirkland, another TCR in the Virginia Beach office. *Id.* at 12. Both TCRs were part of the *Harper* case. *Id.* GEICO claimed "Kirkland admitted in her deposition that she exercised discretion and independent judgment in making liability decisions and negotiated settlements (a hallmark of exempt status) without her supervisor's involvement" and "Schmidt provided an affidavit that she exercised discretion and independent judgment throughout the claims adjusting process." *Id.* GEICO contended that since Kaplan and Clinton "had difficulties that required increased attention by their supervisors", "[t]he highly individualized nature of the inquiry precludes a collective adjudication based on representative evidence." *Id.* at 12-13. GEICO also argued that if the Court grants conditional collective certification, it should not equitably toll the claims for future collective members because the Plaintiffs have not experienced significant delay. *Id.* at 15-17. Plaintiffs in their reply argued that this case is distinguishable from *Harper* because it does not involve a nationwide proposed collective, nor is it procedurally at the stage 2 decertification posture. ECF No. 48 at 4-6.

## II. LEGAL STANDARD

Section 216(b) of the FLSA permits a plaintiff to bring suit "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Although the FLSA and the Fourth Circuit have not specifically delineated a standard for determining whether a potential class is sufficiently "similarly situated" to permit conditional certification, the district courts within the Fourth Circuit follow a two-step approach to determine if the plaintiffs are "similarly situated," (1) the notice stage and (2) the decertification stage. *See, e.g., Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009); *Meeker v. Med. Transport, LLC*, No. 2:14cv426, 2015 WL 1518919, at *2 (E.D. Va. Apr. 1, 2015).

In the notice stage, the Court uses "a fairy lenient standard" to determine whether to provide notice to potential class members. *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006). The plaintiffs must show "that a similarly situated group of plaintiffs exists" and "demonstrate they and potential plaintiffs together were victims of a common policy or plan that violated the [FLSA]." *Meeker*, 2015 WL 1518919, at *3. "The primary focus in this inquiry is whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" *Houston v. URS Cop.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) (quoting *Choimbol*, 475 F. Supp. 2d at 563). "Plaintiffs and putative class members need not have identical situations; '[d]ifferences as to time actually worked, wages actually due and hours involved are, of course, not significant to this [similarly situated] determination.'" *Meeker*, 2015 WL 1518919, at *3 (citing *De Luna-Guerrero v. N.C. Grower's Ass'n Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004)).

Typically once discovery has been completed, the Court proceeds with the decertification stage where using a "heightened fact specific standard," it determines whether the case can proceed to trial. *Choimbol*, 475 F. Supp. 2d at 563. In the "rare case when there is sufficient evidence in the record at the notice stage to reveal that certification of the collective action is not appropriate...the court may collapse the two stage certification and deny certification outright." *Stone v. SRA Int'l, Inc.*, No. 2:14cv209, 2014 WL 5410628, at *3 (E.D. Va. Oct. 22, 2014) (citing *Purdham*, 629 F. Supp. 2d at 547).

When some discovery has been completed, district courts within the Fourth Circuit are divided on whether to apply a heightened standard for conditional class certifications. *Compare Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10cv592, 2011 WL 4351631, at *5 (W.D.N.C. Sept. 16, 2011) (utilizing an "intermediate" standard of review" of "whether a sound

basis exists for proceeding as a collective action while also considering all evidence available at the time" when the parties conducted three months of discovery, exchanged interrogatories and documents, and took several plaintiffs' depositions), *with Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566-67 (D. Md. 2012) (declining to apply an increased standard of review when the parties have completed some discovery). The Court recently denied Plaintiffs' Motion to Stay stage 1 discovery, ECF No. 49, so significant discovery has unlikely been conducted since that time. Nonetheless, certain facts have been proffered by the parties, both in the form of declarations and from discovery in the *Harper* litigation, which the Court must consider. *Purdham*, 629 F. Supp. 2d at 552 (E.D. Va. 2009) (finding the Court may not ignore "salient facts" which suggest a collective action may not be appropriate). However, since no controlling authority from the Fourth Circuit or the Eastern District of Virginia mandates a heightened standard at this stage of the proceedings and GEICO has not argued for a heightened standard, the undersigned applies the lenient standard for the conditional certification stage.

### III. DISCUSSION

For the following reasons, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Conditional Class Certification and Notice under the FLSA, 29 U.S.C. § 216(b), be **DENIED**. Employees are not covered under the FLSA if they fall under the administrative exemption for performing "work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.203(h). Here, Plaintiffs are a combination of TCR 1s and TCR 2s who work for GEICO. Plaintiffs' Complaint does not actually provide a description of Plaintiffs' jobs, but instead lists the job duties they performed, certain duties not performed, and conclusory assertions averring a lack of exercise of judgment and discretion. ECF No. 1. Plaintiffs have alleged that they were deprived of overtime because GEICO improperly deemed them exempt under FLSA for "their

ability to exercise discretion in the performance of their job duties" when they must get supervisor approval for their actions. ECF No. 34 at 7; *see also* ECF No. 1 at ¶¶ 19, 22, and 26. Defendant identified Plaintiffs as claim adjusters who, because they exercise judgment and discretion in carrying out their duties, were properly classified under the administrative exemption. ECF No. 45 at 11.

The appropriate standard here is whether Plaintiffs can show "that a similarly situated group of plaintiffs exists" and "demonstrate they and potential plaintiffs together were victims of a common policy or plan that violated the [FLSA]." *Meeker*, 2015 WL 1518919, at *3. As the *Purdham* court famously observed, "[t]he plaintiff's burden of showing the existence of a potential class of similarly situated is 'not onerous,' but it is also 'not invisible.'" 629 F.Supp.2d at 548 (citations omitted). Plaintiffs argued that TCR 1s and TCR 2s are similarly situated because they all perform the same job and are subject to the common policy of being classified as administratively exempt under the FLSA. ECF No. 34 at 7-8. In their Complaint, Plaintiffs did not include job descriptions of their positions at GEICO other than that they are Telephone Claims Representatives.[1]   The Complaint listed the duties of a TCR 1 as: (1) obtaining statements from claimants/drivers; (2) obtaining other relevant information; (3) inputting information into the Claim IQ system; (4) not engaging in settlement discussions; (5) being involved in the payment or nonpayment of medical bills; (6) inputting data into the Atlas program to generate bill payments; and (7) not having discretion to determine liability coverage.

---

[1] Given that TCRs are tasked by their insurance company employer with processing and resolving claims made by insureds and third parties against GEICO insurance policies, their job description might be considered to be that of claims adjusters. Under the FLSA, claims adjusters generally are considered to engage in duties which involve the exercise of judgment and discretion. C.F.R. § 514.203(a). However, at the hearing, Plaintiffs' counsel specifically advised the Court that he had not identified Plaintiffs as "claims adjusters." Moreover, not all claims adjusters may be engaged in duties which involve the exercise of judgment and discretion. *See, e.g. Perez v. Allstate Ins. Co.*, No. 11-cv-1812, 2014 WL 4635745 (E.D. N.Y. Sept. 16, 2014). The undersigned makes no such determination here, but instead, evaluates the proffers made by the parties to determine whether, based on their duties and the degree to which they are supervised, the TCRs are sufficiently similarly situated such this case may be pursued appropriately as a collective action.

ECF No. 1 at 4-5. The Complaint listed the duties of TCR 2s as "the same primary job duties as TCR 1s, with the added responsibilities of handling claims involving third party bodily injury and conveying settlement offers generated by Claim IQ." *Id.* at 5.

In support of their claims, Plaintiffs proffered declarations that, in limited fashion, set forth certain job duties performed and not performed by TCR 1s and TCR 2s. ECF No. 34, attachs. 1-7. In response, Defendant proffered two declarations and a deposition excerpt demonstrating the ways in which judgment and discretion were exercised by TCR 1s and TCR 2s, and the extent to which they are supervised. ECF No. 45, attach. 1 at 17-21; 27-44. Defendant also relied on the findings of the *Harper* litigation regarding the same job titles for this Defendant wherein the Court decertified the collective action, finding too many variances in employees to efficiently process the case as a collective action. ECF No. 45 at 2, 12-13. Consequently, the Court must evaluate, in light of all the evidence before the Court, and without resolving disputed facts, whether Plaintiffs have met their light burden to show that TCR 1s and TCR 2s in the Virginia Beach GEICO office are similarly situated, such that maintenance of this case as a collective action is appropriate.

Plaintiffs averred in their declarations that they share common duties performed without exercising judgment. Regarding the responsibilities of TCR 1s, the declarations stated that "75%", "85%", "100%", "most", or "essentially all" of their time is spent "speak[ing] with insured, claimants, witnesses and other involved parties about the facts of a claim" and inputting information gathered into GEICO's Claim IQ program. ECF No. 34, attachs. 1-7. In addition, they stated that after inputting data, the decisions regarding coverage and/or liability are made by Claim IQ and/or their supervisor. *Id.* The employees stated that they submit a "coverage problem worksheet" to their supervisor for all claims except incidents where company policy

8

mandates coverage and the supervisor then submits the worksheet and her recommendation for an ultimate coverage determination. *Id.* All of the employees in the declarations said they must obtain supervisor approval before accepting liability except where liability is undisputed and any percentage of the liability accepted must fall within the range of liability calculated by Claim IQ. *Id.* They do not make independent decisions regarding liability or coverage. *Id.* Plaintiffs denied performing functions such as marketing or pricing GEICO's insurance products, or creating policies, computer programs or algorithms.[2] *Id.* Notably, the declarations do not describe how TCR 1s actually resolve claims when offers are not accepted. The declarations of Clinton and Orozco mentioned that TCR 2s are responsible for the same duties as TCR 1s, but also process claims involving third party injuries and resolve small claim settlement offers suggested by Claim IQ that can be approved by their supervisor. ECF No. 34, attachs. 3 and 6.

Defendant countered with evidence from employees demonstrating the wide degree of judgment and discretion exercised by TCR 1s and TCR 2s, both in areas addressed by Plaintiffs (e.g. making liability determinations before inputting data into Claim IQ), and in areas unaddressed by Plaintiffs (e.g. engaging in settlement negotiations). ECF No. 45 at 12-13; attach. 1. These proffers go well beyond Plaintiffs' descriptions of their duties, providing substantially more detail. Defendant submitted a declaration of Matthew Mitchell, the Assistant Vice President for Claims for GEICO's Virginia Beach office, and the third level supervisor of the TCRs. He averred that TCR 1s are responsible for adjusting first party bodily injury claims and third party liability claims not involving bodily injury, and that TCR 2s make liability decisions and adjust third party liability claims. ECF No. 45, attach. 1 at 17. Regarding job duties, Mitchell said that TCR 1s determine if a claim is covered, and if so, supervisory approval

---

[2] Plaintiffs' assertions that they do not perform these functions are puzzling, as these duties would not be expected to be performed by claims representatives who process insurance claims. Hence, Plaintiffs' commonality in denying these responsibilities does little to demonstrate they are similarly situated.

is not needed to handle the claim. *Id.* at 18.   However, if an issue arises, TCR 1s prepare the worksheet with a recommendation for the supervisor. *Id.*   TCR 1s also investigate claims by interviewing claimants, policy holders, witnesses and others about the facts of the accident and record any data from those interviews. *Id.*   Interview guides are provided but the TCRs generally go beyond them or do not need them. *Id.*   The supervisors also may monitor the calls if a TCR needs help. *Id.*

TCR 1s request and review police reports and medical records as well as decide who is liable for an accident, and who breached their duty and how they did so. *Id.*   They also enter information into Claim IQ that ultimately gives a liability range based on the information they inputted. *Id.*   Unless a TCR performs this task poorly, the TCR enters the information of who breached a duty without a supervisor's attention, and normally TCRs can accept or deny liability without supervisory approval. *Id.* at 18-19.   TCR 1s may refer matters to special investigations if fraud is suspected. *Id.* at 19.   They review first party expenses to determine their reasonableness and necessity and, if they are questionable, they can request additional information or medical review. *Id.*   TCR 1s also can negotiate medical expenses and evaluate compensatory damage claims by entering into Claim IQ the medical bills and their own assessment of the severity of the injury, the causal connection to the accident, and the impact of the injury to provide a settlement range. *Id.*   If the range is within their authority, then no supervisor's approval is needed and TCR 1s can go above or below the range generated by Claim IQ if it is wrong. *Id.*

Furthermore, Mitchell stated the job duties of TCR 2s include having settlement authority up to $10,000 per occurrence, but they must get approval from a supervisor over that amount, and occasionally approval is needed within TCR authority "for certain types or amounts of settlements." *Id.*   Mitchell said TCR 2s also negotiate with claimants or their attorneys. *Id.*

Mitchell said that the level of supervision TCRs receives depends on the experience of the TCR and can vary by task and time as well as how skilled the employee is. *Id.* at 20. He stated newer TCRs rely on Claim IQ for guidance more than experienced TCRs and that Clinton and Kaplan both needed varying levels of supervision as they ran into performance problems. *Id.* at 20-21.

Defendant also submitted an affidavit of Laura Schmidt who has worked as a TCR 1 and a TCR 2 in the Virginia Beach office. Schmidt explained her duties as a TCR 1 were to conduct investigations and make liability decisions without supervisor approval. *Id.* at 42. She said she investigated claims as a TCR 1 by interviewing the insured, claimant, and witnesses as well as reviewing police reports, medical records, and photos to gather evidence and determine the scope of the investigation. *Id.* Further, Schmidt said she took recorded statements and determined questions to ask based on her experience and judgment, which sometimes involved departing from the script she was given. *Id.* She identified coverage issues and could decide to afford coverage or to recommend denying coverage. *Id.* She also determined liability before going into the Claim IQ system and could deny liability claims if she determined the insured was not at fault. *Id.* at 43. She reviewed bills and could deny them if she determined they were based on excessive treatment or involved unrelated injuries. *Id.*

Likewise, Schmidt stated that, as a TCR 2, she determines the range for the settlement value of third party injuries and reviews and evaluates demand packages from claimants' attorneys. *Id.* She can make low settlement offers for lost wages, compensatory damages, and some medical bills, as well as negotiate and settle claims within $3,000-$6,000 authority with adverse claimants or their attorneys. *Id.* at 43-44. She can request additional authority and then negotiate settlements once it is obtained, and participates in the offer and demand of the negotiation process. *Id.* Schmidt said she can also end negotiations without settlement on her

judgment, which might lead to potential litigation, or she can choose to have her file reviewed by a supervisor. *Id.* at 44. Regarding the supervision of TCRs, Schmidt said that when she inputs information into Claim IQ, she already has determined the outcome of the liability issue. *Id.* Schmidt said she assesses who breached what duty of care, and then assesses the extent to which the breach caused the accident. *Id.* She said she uses her own judgment in inputting the injury factors and assessing the impact of the injury. *Id.*

Defendant also submitted the testimony of Nadia Kirkland, another Virginia Beach TCR, who was deposed during the *Harper* litigation. Kirkland testified that TCRs decide who is responsible for an accident and how that person committed a breach, without supervisor direction, although supervisors can review the TCR's decision. *Id.* at 32-33. Kirkland said she makes recommendations regarding coverage based on her investigation and uses judgment to determine appropriate interview questions. *Id.* at 33-36. She also stated that she negotiates claims with the adverse side, makes liability decisions before going into Claim IQ, and can go back into Claim IQ to change the data input to reach the liability result she desires. *Id.* at 36-39. As a TCR 2, Kirkland said she can negotiate claims within her authority and can stop negotiations if she is unwilling to alter her offer. *Id.* at 37-38.

Finally, Defendant also relied on the New York courts' determinations in the *Harper* litigation, which included TCRs from Defendant's Virginia Beach location.[3] The Second Circuit vacated and remanded the district court's decision granting summary judgment, stating that there was an issue of material fact as to the degree of supervision and independent judgment exercised by the TCRs and "whether TCRs satisfy[ied] § 541.203(a) by performing enough of its enumerated duties in a sufficiently discretionary fashion." *Harper v. Government Employees*

[3] Defendant stated at the hearing that it did not rely on *Harper* as either controlling authority or for collateral estoppel purposes, but rather cited it for its persuasive authority.

*Ins. Co.*, 586 Fed. Appx. 772, 776 (2d Cir. 2014). Additionally, following remand, the district court decertified the collective. *Harper v. Government Employees Ins. Co.*, No. 2:09-cv-2254, 2016 WL 98516, at *1 (E.D.N.Y. Jan. 6, 2016). The Magistrate Judge's report and recommendation, which was adopted by the district judge, found that "the record feature[d] conflicting testimony of plaintiffs' job duties despite GEICO's common job description and performance criteria for TCRs" and "reveal[ed] 'conflicting testimony regarding how closely GEICO supervisors monitor TCRs' investigations through phone calls, instant messages, and written instructions.'" *Harper*, 2015 WL 9673810 at *5. Here, Plaintiffs argued that this Court should disregard the findings in *Harper* since the instant case is limited to Defendant's Virginia Beach location only, and procedurally this case involves stage 1 certification.

In evaluating the proffers made by the parties, this Court must look at the factual showing that has been made. *Stevens v. HMSHost Corp.*, No. 10 CV 3571 (ILG) (VVP), 2014 WL 4261410, at *5 (E.D.N.Y. Aug. 27, 2014) ("[I]t is well established 'that blanket classification decisions do not automatically qualify the affected employees as similarly situated, nor eliminate the need to make a factual determination as to whether class members are actually performing similar duties.'") (citation omitted). While the Court should not resolve factual disputes such as choosing to believe one side versus another concerning a disputed fact, the Court cannot ignore undisputed facts presented to it. Here, there are undisputed facts that some TCRs exercise significant discretion and judgment in performing their duties. ECF No. 45, attach. 1. While examining claims made by TCRs nationwide, including in the Virginia Beach office, the Eastern District of New York determined after extensive collective discovery that a collective action was not appropriate. *See, Harper*, 2015 WL 9673810 at *6; *Harper* 2016 WL 98516 at *1. Plaintiffs are required to proffer evidence that collective pursuit of this action is appropriate. *Meeker*,

2015 WL 1518919, at *3. This burden, while light, is "not invisible." *Purdham*, 629 F. Supp. 2d. at 548 (citation omitted). In evaluating whether to certify an action as a collective, the Court is required to review all the facts proffered. *Id.* at 552 (denying plaintiffs' motion for conditional class certification because "based on the probable necessity of individualized FLSA determinations for each putative class member", the Court found it could not "ignore salient facts that suggest that this case, as presented here, is not a suitable vehicle for collective action"). Plaintiffs' very limited proffer may establish at this stage of the proceeding that they, themselves, are similarly situated, but it does not establish that other TCRs in Virginia Beach are. Defendant's proffer, on the other hand, goes well beyond the limited evidence proffered by Plaintiffs, providing detailed information that demonstrates the variety of differences and distinctions between and among TCR duties and the extent to which they are supervised.

Furthermore, the findings of the Second Circuit and the district court in *Harper*, that GEICO's TCRs are not similarly situated because of the varied nature of how closely supervisors limited the employees' exercise of judgment and discretion, and the degree to which individual employees' decisions were dictated by the Claim IQ software, cannot be overlooked. These findings included consideration of TCRs in the Virginia Beach office. Other than arguing their case is limited to the Virginia Beach office and not to a nationwide group as in *Harper*, Plaintiffs have offered no facts distinguishing the Eastern District of New York's findings, have offered no evidence as to how the Virginia Beach operation differs in any way from the operations elsewhere, and offered little in the way of facts which contradict or rebut the evidence submitted by Defendant. Absent such evidence, the facts before the Court demonstrate that there are too many individual variations in the way job duties are carried out, and the degree to which supervisors dictate to the TCRs, to make certification of a collective action appropriate here.

Finally, Plaintiffs have moved the Court for an Order tolling the statute of limitations for potential collective members from August 16, 2016—the date Defendant moved for transfer of this case to the Judicial Panel of Multidistrict Litigation—until the Court rules on the motion for collective certification. Given the Court's recommendation that this matter not be conditionally certified, Plaintiffs' request for equitable tolling is **MOOT**. Nonetheless, the undersigned would not recommend equitable tolling in any event. Plaintiffs argued that Defendant's motion to transfer delayed them from proceeding with the litigation in this district even though GEICO had little chance to succeed on its motion, describing it as "a moonshot attempt." ECF No. 48 at 7. Despite acknowledging that GEICO's "odds of success were near zero," *id.*, Plaintiffs failed to move forward on this litigation, instead waiting until March 3, 2017—nearly three months after the motion to transfer was denied—to move for collective certification.[4] Rule 2.1(d) of the Rules of the Judicial Panel on Multidistrict Litigation provides that "[t]he pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." Plaintiffs' failure to proceed with the litigation in the face of Rule 2.1(d) and their own declaration that Defendant had little chance of success in transferring this case does not justify the application of equitable tolling.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Plaintiffs' Motion for Conditional Collective Certification and for Equitable Tolling, ECF No. 33, be **DENIED**.

---

[4] A stay issued by the Court in light of Defendant's motion to transfer, issued on November 23, 2016, was lifted three weeks later on December 15, 2016.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
April 14, 2017